**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RIVERBANK, INC.

                                           Plaintiff,

v.                                                        CIVIL ACTION NO. 1:07-cv-12354

RIVER BANK,

                                           Defendant.

DEFENDANT RIVER BANK'S STATEMENT OF UNDISPUTED MATERIAL FACTS

In support of its Motion for Summary Judgment, and pursuant to Local Rule 56.1,

Defendant River Bank (the "Defendant" or the "Bank") submits this concise statement of material

facts of record as to which there is no genuine issue to be tried.

**Defendant River Bank and Defendant's Banking Services**

1.      Defendant River Bank is a Massachusetts chartered savings bank with 7 branch locations

located on the North Shore of Boston and in southern New Hampshire.  See Exhibit A to the

Declaration of Thomas F. Holt, Jr. ("Holt Decl."), Jones Dep. at 9:19-24.

2.      The Defendant offers banking services, including residential and commercial real estate

loans, construction, consumer and commercial loans and checking, money market, certificate of

deposit and individual retirement accounts.  See Exhibit B to Holt Decl., Def.'s Interrogatory Resp.

No. 1; Exhibit A, Jones Dep. at 10:4-7.

3.      The Defendant's customers include individuals, corporations and small businesses.  Exhibit

A, Jones Dep. at 10:6-7.  Most of the Defendant's customers are located on the North Shore of

Massachusetts or in Southern New Hampshire.  Id. at 10:8-11:5.

4.      The Defendant does not currently have any customers in Brockton, Massachusetts.  Id. at

45:18-24.

5.      The Defendant focuses its advertising and marketing efforts on the North Shore and

Southern New Hampshire.  Id. at 31:15-34:4.

6.      For example, the Defendant advertises its banking services and submits press releases

regarding promotional events to newspapers such as The Salem Observer, the Eagle Tribune in

Lawrence, The Andover Townsman, Methuen Life.  Id. at 32:12-33: 23.  The Defendant also

advertises its services on local, low wattage Spanish-speaking radio stations on the North Shore.  Id.

at 31:15-32:11.

7.      The Defendant defines its trade area as extending "about 20 miles outside of [its] core area"

on Boston's North Shore.  Id. at 10:18.

8.      As a precaution against fraud, the Defendant does not maintain deposit relationships with

customers unless the customer lives or works near a branch location, or has had an existing

relationship with the Defendant prior to leaving the area.  Id. at 10:8-23.

9.      The Defendant also advertises and offers services through its website located at

<riverbk.com>, which provides information about the Defendant's banking services and also allows

its customers to engage in online banking transactions and manage account information.  See

Exhibit C to Holt Decl., screen capture of the Defendant's website; Exhibit D to Holt Decl., Exhibit

F, Ex. 31 to Cosgrove Deposition.

**Defendant's Name Change**

10.     For over one hundred years, River Bank was known as Lawrence Savings Bank.  Exhibit A

to Holt Decl., Jones Dep. at 11:20-12:1.

11.     In early 2006, the Bank employed a new management team, headed by President and CEO

Gerald Mulligan.  Id. at 12:11-13:10.

12.     The new management team was tasked with reinvigorating the Bank, which had become

stagnant with regard to profitability and had experienced a decline in its reputation in the

community.  Id. at 12:9-13:4.  The team decided re-branding of the Bank would increase its

visibility in the community and communicate the changes taking place under the new management.

Id.

13.     The Bank considered a number of names, including Tower Bank, Essex Bank, Vista Bank

and River Bank, and the Bank asked its counsel, James A. Brett, to conduct searches to determine

the availability of these four names.  Id.  at 16:12-24.

14.     The screening searches revealed three banks using the words "River" and "Bank" in

connection with banking services.  Id.  at 20:7-13.  One bank was located in Wisconsin, one in

Oregon, and a third – "Connecticut River Bank" was located in New Hampshire.  Id.

15.     The Defendant reached out to the Connecticut River Bank to ensure there would be no

conflict with the Defendant's decision to use the name "River Bank."  Id. at 20:10-13.

16.     After confirming there would be no conflict with Connecticut River Bank's prior use, the

Defendant ultimately decided to change its name to "River Bank."  Id.  at 20:10-13.

17.     The name was selected in part because it reflected the Bank's heritage as a member of the

Merrimack River Valley community and because the name was relatable and accessible to the

Bank's customers.  Id.  at 16:5-11; 17:17-18:17.

**Plaintiff Riverbank, Inc. and Plaintiff's Tax and Accounting Services**

18.     After the Defendant had selected the name River Bank, it became aware of Plaintiff

Riverbank, Inc. (the "Plaintiff").  Exhibit A to Holt Decl., Jones Dep. at 19:20-20:13.

19.     Riverbank, Inc. did not appear in Mr. Brett's initial trademark search of the United States

Patent and Trademark Office database.  Id. at 19:20-20:13.

20.     At the time Mr. Brett conducted his search in 2006, the Plaintiff had no federal trademark registrations or pending applications.   The Plaintiff later applied for a registration for the mark "Riverbank, Inc.", however, this application was not filed until March of 2007 (Exhibit D to Holt Decl., Cosgrove Dep. at 69:4-72:14) well after Mr. Brett's search was conducted and the Bank had already changed its name.

21.     The Plaintiff has since allowed its trademark application to abandon.  Exhibit J to Holt Decl., Exhibit D, Cosgrove Dep. at 72:21-23; 167:7-10.

22.     Plaintiff Riverbank, Inc. is a Massachusetts corporation located in Brockton, Massachusetts. Exhibit D, Cosgrove Dep. at 7:5-10; 75:17-80:18.

23.     Since 2001, the Plaintiff has used the mark "Riverbank, Inc." in connection with its services. Exhibit D, Cosgrove Dep. at 29:22-24; 33:24-34:5; Exhibit E, Ex. 5 to Cosgrove Deposition.

24.     The Plaintiff also uses a stylized version of the mark which appears on its business cards, letterhead and signage.  Exhibit D, Cosgrove Dep. at 61:16-63:6; 67:11-24; Exhibit E, Ex. 3 and Ex. 4 to Cosgrove Deposition.  The stylized mark appears below:

# Riverbank, Inc.

25.     The Plaintiff's letterhead includes the phrase "a tax planning and preparation firm."  Exhibit D, Cosgrove Dep. at 62:14-63:6; Exhibit E, Ex. 3 to Cosgrove Dep.  The business card for the Plaintiff's principal Daniel Cosgrove identifies Mr. Cosgrove as a "tax planner."  Exhibit D, Cosgrove Dep. at 67:11-24; Exhibit E, Ex. 4 to Cosgrove Deposition.  Neither lists financial services.  Exhibit D, Cosgrove Dep. at 62:14-63:6; 67:11-24; Exhibit E, Ex. 3 and Ex. 4 to Cosgrove Deposition.

26.     The Plaintiff does not use any shortened version of its mark, i.e., "Riverbank" without "Inc." Exhibit D, Cosgrove Dep. at 80:13-81:4; 168:15-169:2; 215:6-12.

27.     The Plaintiff offers tax planning and preparation services and accounting services for

individuals, partnerships, companies and corporations.  Exhibit I to Holt Decl., Pl.'s Interrogatory

Resp. No. 1; Exhibit D, Cosgrove Dep. at 34:1-37:1.  The Plaintiff charges an average of $60-$175

for preparing an individual tax return.  Exhibit D, Cosgrove Dep. at 146:11-19.

28.     The "bulk" of the Plaintiff's work is tax preparation, however, the Plaintiff also offers

"oddball stuff" such as bookkeeping or financial projections or accounting services.  Exhibit D,

Cosgrove Dep. at 34:1-36:3.

29.     On each of its annual reports filed with the Massachusetts Secretary of the Commonwealth,

the Plaintiff describes its business as "tax planning and preparation."  Exhibit E, Ex. 6-8 to

Cosgrove Deposition; Exhibit D, Cosgrove Dep. at 75:17-80:18.

30.     The Plaintiff's abandoned trademark application included only services in International

Class 35, specifically "Tax and taxation planning, advice, information and consultancy services;

Tax preparation."  Exhibit E, Ex. 5 to Cosgrove Deposition; Exhibit D, Cosgrove Dep. at 71:23-

73:7.

31.     The Plaintiff does not offer banking services.  Exhibit D, Cosgrove Dep. at 162:9-10.   In

fact, the Plaintiff does not offer any of the services provided by the Defendant and is not a

competitor of the Defendant; indeed, Mr. Cosgrove testified:

> Q:     Okay. Is Riverbank, Inc. a bank?
> A:     No.
> Q:     Do you offer banking services?
> A:     I do not.
> Q:     Do you offer real estate loans?
> A:     I do not.
> Q:     Do you offer construction loans?
> A:     I do not.
> Q:     Do you offer consumer loans?
> A:     I do not.
> Q:     Do you offer commercial loans?
> A:     I do not.
> Q:     Do you offer checking account services?
> A:     I do not.

Q:      Do you offer money market account services?
A:      I do not.
Q:      Do you offer certificate of deposit account services?
A:      I do not.
Q:      Do you offer individual retirement account services?
A:      I do not.
Q:      Do you offer savings account services?
A:      I do not.
Q:      Do you offer any banking services?
A:      I do not.
Q:      Do you compete with the defendant in this case for the services?
A:      For the services, no.

Id. at 162:7-163:11.

32.     The Plaintiff's clients are mostly individuals but also include corporations, small businesses

and nonprofit organizations.  Id. at 35:23-37:1.

33.     The majority of the Plaintiff's clients are located in the Brockton, Massachusetts area but

some are located outside of Massachusetts.  Id. at 37:2-10.

34.     The Plaintiff receives most of its clients by word of mouth and referrals.  Id. at 55:8-11.  Mr.

Cosgrove testified: "Certainly word of mouth and referrals is probably the biggest place where all –

I'd say all – the largest portion of my business comes from" Id.

35.     In fact, the Plaintiff admitted that "every new client I've gotten, with very few exceptions,

are from referrals."  Id. at 161:24-162:2.

36.     Nearly all of the Plaintiff's advertising focuses solely on its tax planning and preparation

services.  Id. at 65:13-66:4.

37.     The Plaintiff targets its advertising to small businesses and individuals.  Id. at 58:15-18.

38.     The Plaintiff engages in limited local advertising of its services in print.  Id. at 54:22-56:5.

39.     For example, the Plaintiff advertises by placing an ad in the local Yellow Pages or including

Mr. Cosgrove's business card in publications by local sports organizations or the local police

association.  Id. at 52:24-56:5.

40.     The Plaintiff also purports to send occasional mailings on its company letterhead to its current, past, and prospective clients.  Id. at 56:9-55:8.

41.     The Plaintiff participated in one "email campaign" run by WBZ radio station advertising its tax preparation services.  Id. at 181:15-183:5

42.     The Plaintiff also has a very limited presence on the Internet.  Id. at 45:19-51:17; 60:20-61:5; 66:5-67:10; 203:1-204:11.

43.     Although the Plaintiff has registered two domain names <riverbankincmassachusetts.com> and <riverbankincmass.com>, it does not currently provide services or advertise its services on these websites.  Id. at 46:18-51:17; 203:1-204:11.

44.     The Plaintiff occasionally communicates with its clients via email.  Id. at 45:15-46:2.  The Plaintiff's email address does not incorporate its "Riverbank, Inc." mark or use its registered domain names; instead the Plaintiff uses the email address "484taxprep@live.com."  Id. at 45:15-46:2.  This email address appears on the Plaintiff's business cards.  Exhibit E, Ex. 4 to Cosgrove Deposition.

45.     The Plaintiff also pays to advertise its services with two third-party website providers.  Exhibit D, Cosgrove Dep. at 47:21-51:17; 60:20-61:5.

46.     The first is a local service provider database called "FreeServiceFinder," located at <freeservicefinder.com>.  Exhibit H, Ex. 38, Ex. 38A, Ex. 38B to Cosgrove Deposition.  On the site, users are first asked to select a broad geographic location for the services.  Id., Ex. 38A to Cosgrove Deposition.  Among the choices are "South Shore," "Boston & North Shore," "Western MA," etc.  Id., Ex. 38A to Cosgrove Deposition.  A user is then given the option of narrowing the search by service type and narrower geographic location.  Id., Ex. 38B to Cosgrove Deposition.  The Plaintiff's advertisement is located by choosing the "Plymouth County" link under the heading "Accountant/Tax Preparer."  Id., Ex. 38B to Cosgrove Deposition.  The Plaintiff's page displays the

words "Riverbank, Inc." as well as the name "Daniel F. Cosgrove" appearing with the title "EA, Tax Planner." Id., Ex. 38C to Cosgrove Deposition.

47.     In the three paragraphs describing the Plaintiff's business, "Riverbank, Inc." is not used once. Id. Instead, Daniel F. Cosgrove is mentioned by name with respect to the offered tax planning services. Id. The website address for this page does not use "Riverbank" or "Riverbank, Inc." Id.; Exhibit D, Cosgrove Dep. at 202:6-22. Rather, the address appears as: <http://www.freeservicefinder.com/Dan_Cosgrove.html>. Exhibit H, Ex. 38C to Cosgrove Deposition; Exhibit D, Cosgrove Dep. at 202:6-22.

48.     The second web provider the Plaintiff subscribes to is called "Helloworld." Exhibit D, Cosgrove Dep. at 47:23-48:2; 49:7-10; 50:21-6. The Plaintiff could not provide any further information regarding its listing with "Helloworld." Id. at 51:7-9; 66:20-67:1.

49.     The Plaintiff is also listed on various third-party websites on the Internet that are not paid for by the Plaintiff or subscription based. Id. at 52:13-19; 184:9-199:18. These listings can be accessed using search engines provided by Google or Yahoo. Id. at 184:9-199:18.

50.     The Plaintiff does not monitor or police these third-party websites to ensure it is being identified correctly. Id. at 67:7-10.

51.     In fact, a number of third-party sites list the Plaintiff as "River Bank" – using two words to identify the Plaintiff, rather than one, and then include the Plaintiff's contact information. Id. at 186:5-188:14; Exhibit F, Ex. 32 and Ex. 32A to Cosgrove Deposition; Exhibit G, Ex. 32B to Cosgrove Deposition.

52.     For example, a search on Google search engine for "River Bank Massachusetts" included two references to the Plaintiff, one listing the Plaintiff as "Riverbank, Inc." with the Plaintiff's current address and telephone number and one listing the Plaintiff as "River Bank, Inc." with Plaintiff's former address and current telephone number. Exhibit D, Cosgrove Dep. at 186:5-

188:14; <u>Exhibit F</u>, Ex. 32 and Ex. 32A to Cosgrove Deposition; <u>Exhibit G</u>, Ex. 32B to Cosgrove

Deposition.

53.      Likewise, a search for "Riverbank, Inc. Massachusetts" on Google search engine yields, as

the first hit, a listing for "River Bank, Inc." with the Plaintiff's current address, current phone

number and a map of the Plaintiff's current location.  <u>Exhibit D</u>, Cosgrove Dep. at 191:24-194:16;

<u>Exhibit G</u>, Ex. 33, Ex. 33A, Ex. 33B, Ex. 33C to Cosgrove Deposition.  Similar searches on

Yahoo!'s Yellow Pages site revealed other instances in which the Plaintiff was identified as "River

Bank" and the Plaintiff's correct address and telephone number were listed.  <u>Exhibit D</u>, Cosgrove

Dep. at 194:18-199:18; <u>Exhibits G</u> and <u>H</u>, Ex. 35-37 to Cosgrove Deposition.

54.      Indeed the Plaintiff admits:

> Q:      And again, is there anything that you or someone you direct does on behalf of
> Riverbank, Inc. to make sure that your business is identified properly on the internet?
> A:      Apparently not.
> Q:      Okay.  Is it fair to say that I could type in the term "Riverbank" as one word and not
> necessarily find your business?
> A:      It would appear so, yes.
> Q:      Is it also fair to say that I could type in the words "River Bank," both initial
> capitalized and find your business?
> A:      Yes.
> Q:      With your current number?
> A:      Mm-hmm.

<u>Exhibit D</u>, Cosgrove Dep. at 204:14-205:4.

55.      In fact, aside from its communications with the Defendant, the Plaintiff has done little to

enforce or protect its trademark rights in "Riverbank, Inc." <u>Id.</u> at 67:7-10; 166:7-168:14.  The

Plaintiff has not contacted any other entities that use the name "River Bank" regarding its trademark

rights.  <u>Id.</u> at 166:7-168:14.

56.      Furthermore, although the Plaintiff filed a trademark application in 2006 for the mark

"Riverbank, Inc." that application has since gone abandoned.  <u>Exhibit J</u> to Holt Decl.; <u>Exhibit D</u>,

Cosgrove Dep. at 72:21-23; 167:7-10.

**Defendant's Name Change**

57.     In April of 2006, in preparation for the Defendant's name change, Defendant's counsel Mr. Brett contacted the Plaintiff by letter to suggest that the Plaintiff change its official corporate name (but not the name under which the Plaintiff did business) to "Riverbank Financial, Inc."  Mr. Brett believed, at the time, that the Bank might have a problem registering its corporate name in Massachusetts in light of the Plaintiff's incorporation as Riverbank, Inc.  Exhibit L to Holt Decl., Ex. 2 to Brett Deposition.

58.     The Defendant had encountered some initial problems registering its name in New Hampshire in light of another entity using the words "River" and "Bank."  Exhibit L, Brett Dep. at 16:15-16:24;  Exhibit A, Jones Dep. at 20:14-19.

59.     The Defendant and its counsel did not believe there would be a conflict between both entities using their respective names because "River Bank" and "Riverbank, Inc." were sufficiently distinct.  Exhibit A, Jones Dep. at 20:20-27:1; Exhibit L, Brett Dep. at 14:4-15:4; Ex. 2 to Brett Deposition.

60.     In his letter to the Plaintiff, Mr. Brett suggested that the Plaintiff continue doing business under the name "Riverbank, Inc." but change its official corporate name.  Exhibit L, Ex. 2 to Brett Deposition.

61.     Mr. Brett and Mr. Cosgrove may have exchanged voicemail messages, however, the Plaintiff did not substantively respond to Mr. Brett's letter prior to the Bank's name change. Exhibit L, Brett Dep. at 8:19-10:19; Exhibit D, Cosgrove Dep. at 170:7-172:19.

62.     In fact, the Secretary of State's Office had no issues with the Defendant's name change. The Bank's name change was approved by both the Commissioner of Banks and the Secretary of the State.  Exhibit K to Holt Decl.; Exhibit B, Def.'s Interrogatory Resp. 5.

63.     The Bank's name change was legally effective June 23, 2006.  Exhibit M to Holt

Declaration.

64.     Since changing its name, the Defendant uses the mark "River Bank" most often in a stylized

logo which appears below.  Exhibit A, Jones Dep. at 30:11-31:3; Ex. 9 to Jones Deposition.



65.     The Defendant's stylized logo consists of the words "RIVER" and "BANK," appearing in

different colors with a space between the words.  Id. at 30:22-31:3.

66.     In marketing and publicity materials in which the word appears in text, the mark appears as

two words without a space with the first letter of each word capitalized, i.e. RiverBank.  Id. at 27:4-

19; 29:13-24.

**Alleged Instances of Confusion**

67.     The Plaintiff alleges that, following the Bank's name change, it began receiving misdirected

communications for the Bank which it was forced to expend considerable time and money to

handle.  Exhibit D, Cosgrove Dep. at 219:18-220:2; Complaint at ¶ 14, Dkt. No. 1.

68.     In fact, the Plaintiff produced only 18 documented instances of alleged confusion from June

2006, when the Defendant changed its name until late 2008 after the lawsuit had been filed.  See

Exhibit D, Cosgrove Dep. at 141:10-142:13 (counting nineteen instances); 154:7-156:11

(subtracting one communication intended for Two Rivers Group following receipt of original

document).

69.     The Plaintiff has classified these instances as "misdirected communications" based on its

belief that the referenced phone call or letter was intended for the Defendant but instead reached the

Plaintiff's tax preparation office.  Id. at 89:8-90:13; 99:15-19; 103:9-24; 132:7-16.

70.     In such cases, Plaintiff "identified that they were looking for River Bank, and I said you've

– you haven't reached what you're looking for." Id. at 85:19-21.

71.     Plaintiff admitted that whether the Defendant was the intended recipient of the

communication was sometimes based on a "best guess." Id. at 96:7.

72.     The chart below summarizes each documented instance of alleged actual confusion

produced by Plaintiff:

| Chart 1 | | |
|---|---|---|
| No. | Description | Citation |
| 1. | Handwritten note: "Marcia looking to reach mortgage broker Jack Piloi 978-269-2218 9:42 am 8-17-2006 I returned called @ 10:16am" | Ex. 9 to Cosgrove Deposition; Ex. 25 to Cosgrove Deposition; Cosgrove Dep. at 82:16-85:13; 138:12-141 |
| 2. | Handwritten note: "9/8 12:35 617-983-4600" | Ex.9 to Cosgrove Deposition; Cosgrove Dep. at 85:14-287:1; 89:17-91:22 |
| 3. | Handwritten note: "10/9 1:17 pm Hire Right 866 827 8143 x 1048" | Ex. 9 to Cosgrove Deposition; Cosgrove Dep. at 87:289:16-13; 91:23-92:7 |
| 4. | Facsimile from Albert Seksaria, Verifications Researcher, HireRight to Records, Description: Employment Verification | Ex. 10 to Cosgrove Deposition; Cosgrove Dep. at 93:7 – 96:18. |
| 5. | Handwritten note: "8/8 12:35 978 804-1804" | Ex. 11 to Cosgrove Deposition; Cosgrove Dep. at 99:13-101:6. |
| 6. | Handwritten note: "8/8 3:54 pm 617-388-2914" | Ex. 11 to Cosgrove Deposition; Cosgrove Dep. at102:1-17. |
| 7. | Handwritten note: "12/28 3:58 pm unknown caller" | Ex.12 to Cosgrove Deposition; Cosgrove Dep. at 104:17-107:10. |

| | | |
|---|---|---|
| 8. | Handwritten note: "Candi Rodrigues 508-558-6717 1-12-2007 12:43pm looking for mortgage co." | Ex.13 to Cosgrove Deposition; Cosgrove Dep. at 109:20-112:1 |
| 9. | Letter from Anna Maria Montano, Assistant Property Manager, Essex Tower to River Bank regarding Verification of Assets | Ex. 14 to Cosgrove Deposition; Cosgrove Dep. at 112:2-114:17; 152:12-154:6 |
| 10. | Handwritten note: "6-654-2066 Clint Lynch Bear Stearns looking for River Bank 4:04pm 1/22/2007" | Ex.15 to Cosgrove Deposition; Cosgrove Dep. at 115:18-117:16 |
| 11. | Handwritten note: "11:24 am 4/11/2007 Indy Mac Bank looking to do a wire transfer for Michael Munzi" | Ex. 16 to Cosgrove Deposition; Cosgrove Dep. at 117:17-121:11 |
| 12. | Facsimile from Doreen Banks, Kingswood Leasing Inc. to River Bank, Attention Commercial Checking regarding Bank Reference – Verification of Deposit | Ex. 17 to Cosgrove Deposition; Cosgrove Dep. at 121:12-123:9 |
| 13. | Handwritten note: "9:22 am 10/1/2007 North Andover Mass Ave Mortgage – seizure Williams Group 603-669-0961" | Ex.19 to Cosgrove Deposition; Cosgrove Dep. at 124:12-126:9 |
| 14. | Facsimile from Beverly Favreau to Riverbank regarding Phyllis Jackowski's accounts | Ex. 20 to Cosgrove Deposition; Cosgrove Dep. at 124:12-126:9 |
| 15. | Handwritten note: "7/14 @ 11:30 978-826-1299" | Ex. 21 to Cosgrove Deposition; Cosgrove Dep. at 128:7-131:14 |
| 16. | Handwritten note: "2"13 p, 5-26-2008 Derby Associates 781-630-2834 781-848-6969 looking for Chris in Human Resources" | Ex. 22 to Cosgrove Deposition; Cosgrove Dep. at 131:15-134:6 |
| 17. | Handwritten note: "603-658-0002 4/1/08 9:22 am" | Ex. 23 to Cosgrove Deposition; Cosgrove Dep. at 134:7-135:22 |
| 18. | "/19/08 10:06 am Man looking for a branch in Andover 978-479-4456" | Ex. 24 to Cosgrove Deposition; Cosgrove Dep. at 135:23-137:20 |

73.     The Plaintiff did not document and could not specifically recall how much time was spent

handling each call.  Exhibit D, Cosgrove Dep. at 224:7-15.  Mr. Cosgrove's testimony suggests that

most calls were no more than ten to twenty minutes:

> I can tell you it was less than an hour. So, you know, we can be reasonable about it but I, honestly, I couldn't tell you how many times or if it was more than ten or less than ten or over fifteen or less than fifteen.  Id. at 84:13-17
>
> Don't know if it was a few minutes or ten minutes.  Id. at 135:21-22,
>
> So my guess is it was more than a few minutes.  It could have been ten.  It could have been more than that.  Id. at 134:2-4.

74.     The only voicemail message the Plaintiff recorded lasted approximately 54 seconds, from

the time to access the voicemail until the end of the message.  Id. at 140:5-8; Exhibit F, Ex. 25 to

Cosgrove Deposition.

75.     Indeed, the Plaintiff testified with regard to some calls that "I would have kept it as short as

possible," Exhibit D, Cosgrove Dep. at 121:9-10, "[s]ometimes it was, you know, very short," id. at

104:9, "[a]gain, it happens fast," id. at 106:2 , "it would have been something quick," id. at 129:8-9.

76.     Mr. Cosgrove also testified that "sometimes you wind up in a conversation, some people

you probably wind up talking to them about the weather."  Id. at 136:14-16

77.     When asked to estimate the aggregate amount of time spent handling misdirected

communications, Mr. Cosgrove "couldn't render a guess."  Id.  at 142:20-143.  Mr. Cosgrove

testified further:

> Q:     Okay. You're saying that your alleged trademark infringement has caused you some damage?
> A:     Yes.
> Q:     And I would take some of that is the amount of time that you've had to deal with these instances?
> A:     Correct.
> Q:     And you have documented nineteen instances?
> A:     Mm-hmm.
> Q:     And you have no idea how much time it would have taken you to deal with these particular nineteen instances?
> A:     I don't.

<u>Id.</u>  at 143:4-15.

78.     In fact, instead of forwarding any communications to the Defendant, Mr. Cosgrove simply

told the callers: "Oh you're looking for River Bank.  You have the wrong phone number" <u>id.</u>  at

104:10-11; "you have reached the wrong place or you're looking for River Bank on the north

shore," <u>id.</u> at 131:8-11.  When Mr. Cosgrove received mail or faxes, he forwarded them to his

attorney.  <u>Id.</u> at 113:5-6; 127:5-8

79.     In fact, the Plaintiff indicated that the messages were only taken to keep track of the number

of telephone calls, not to forward any information to the Defendant.  <u>Id.</u> at 99:20-23; 100:8-12;

130:14-16; 149:12-22.

80.      Some of the calls were only recorded in hindsight, when Mr. Cosgrove would refer to his

caller ID system to identify the number and/or name of the caller.  <u>Id.</u> at 106:2-17.

81.     The Plaintiff also testified that Riverbank, Inc. receives misdirected phone calls intended for

the post office and an electric company that has a similar telephone number to the Plaintiff's

number.  <u>Id.</u> at 156:23-158:5.  Plaintiff also received a package intended for "Two Rivers Holding

Group," a New York corporation, which it forwarded by Fed Ex to the intended recipient.  <u>Id.</u>;

<u>Exhibit E</u>, Ex. 18 and Ex. 18A to Cosgrove Deposition.

**Effects of Defendant's Name Change**

82.     Importantly, the Plaintiff testified unequivocally that no customers or profits were lost to the

Defendant.  For example:

> Q:     Do you know of any clients that you have that you lost to the defendant?
> A:     I'm not aware of that.
> Q:     Do you know of any sales of your services that you've lost to defendant?
> A:     I'm not aware of any.
> Q:     Do you know of any client that the defendant took from you?
> A:     I'm not aware of any.
> Q:     And that's because the defendant is a bank, correct?
> A:     Right.
> Q:     And you're not a bank?

A:      Correct

Id. at 163:12-164:1.

Q:      But you're not aware of any time a client of yours went to the defendant for tax
        planning purposes; is that right?
A:      Right.  I'm not aware of that.

Id. at 164:24-165:3.

Q:      From all the instances in your general knowledge as you sit here today, has there
        been any time where there have been any profits that the defendant has earned
        because it has gotten clients that were intended to be your clients?
A:      I'm not –
        MR. DORNY: Objection.  You can answer
A:      I'm sorry
        MR. DORNY: You can answer.
A:      I can answer, okay.  I'm not aware of that.

Id. at 177:9-20.

Q:      Would you expect that clients that were – would have gone to you for your services
        that you provide under Riverbank, Inc., have instead gone to the defendant?
        MR. DORNY: You may answer
A:      I wouldn't expect that, no.

Id. at 178:3-9.

83.     The Plaintiff has also been unable to quantify its alleged damages, instead testifying

generally that "[t]ime is money to me," id. at 221:8, and "[m]oney certainly would have been spent

on phone calls.  Money certainly would have been spent on forwarding faxes."  Id. at 221:17-19.

84.     This money includes, according to the Plaintiff, any charges the Plaintiff may have incurred

for using over an allotted number of phone calls and the ink and paper used for incoming faxes –

none of which has been documented.  Id. at 221:20-223:22.  Mr. Cosgrove testified:

Q:      So your business phone number doesn't have a flat rate no matter how much you use
        the phone?
A:      It has a flat rate with a certain amount of restriction on it.
Q:      And this is through Verizon?
A:      Yes.
Q:      And have you calculated how often you go over that number?
A:      I have not.

Q:      Have you looked at and correlated between the months where we have documented
        instances of your misdirected communications, the corresponding phone bill for
        those months?
A:      I have not.
Q:      Do you get charged for incoming calls onto this phone plan?
A:      Don't think so.

Id. at 222:7-23.

Q:      And when you have an incoming fax that comes to your business, do you get
        charged for that?
A:      Well, it takes up ink and paper.
Q:      Okay.
A:      So the call itself, no, but the ink and paper that it uses.
Q:      When you send an outgoing fax, do you get charged for that?
A:      Yes.
Q:      From the instances that we reviewed today, the eighteen instances, did you see any
        evidence where you sent a fax outgoing?
A:      No.

Id. at 223:5-17.

River Bank,

By its attorneys,


  /s/ Thomas F. Holt, Jr.      
Thomas F. Holt, Jr. (BBO# 238830)
  thomas.holt@klgates.com
Tara C. Clancy (BBO# 567020)
  tara.clancy@klgates.com
Phi Lan M. Tinsley (BBO# 656815)
  philan.tinsley@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111-2950
(617) 261-3100

Dated: February 27, 2009

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

  /s/ Thomas F. Holt, Jr.      

- 18 -