# EXHIBIT L

# O'BRIEN & LEVINE

### Court Reporting Services



**YOUR BOSTON CONNECTION...WORLDWIDE**

## Riverbank, Inc. v. River Bank

**Transcript of the Testimony of:**

# James A. Brett, Esq.

# January 23, 2009

www.court-reporting.com
mail@court-reporting.com

**195 State Street**
**Boston, MA 02109**
**(617) 399-0130  888.825.DEPO(3376)**

Deborah G. Rumson   32554



James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF MASSACHUSETTS

3          CIVIL ACTION NO. 1:07-CV-12354-WGY

4    ----------------------------x

5    RIVERBANK, INC.,

6                    Plaintiff

7            vs.

8    RIVER BANK,

9                    Defendant

10   ----------------------------x

11        DEPOSITION OF JAMES A. BRETT, ESQUIRE, a

12   witness called on behalf of the Plaintiff,

13   taken pursuant to the Massachusetts Rules of

14   Civil Procedure, before Deborah G. Rumson,

15   Registered Professional Reporter, Certified

16   Shorthand Reporter, and Notary Public, in and

17   for the Commonwealth of Massachusetts, at the

18   Offices of K&L Gates, LLP, State Street

19   Financial Center, One Lincoln Street, Boston,

20   Massachusetts, on Friday, January 23, 2009,

21   commencing at 9:36 a.m.

22

23

24

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

2

```
 1              A P P E A R A N C E S

 2     BRETT N. DORNY, ESQUIRE

 3     Law Offices of Brett N. Dorny

 4     386 West Main Street

 5     Northborough, MA 01532

 6     508.709.0501

 7     bndorney@dornylaw.com

 8          Counsel for the Plaintiff

 9

10     THOMAS F. HOLT, JR., ESQUIRE

11     SARA E. YEVICS, ESQUIRE

12     K&L Gates, LLP

13     State Street Financial Center

14     Boston MA 02111-2950

15     617.261.3165

16     thomas.holt@klgates.com

17          Counsel for the Defendant

18

19

20

21

22

23

24
```

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

3

```
 1                    I N D E X

 2    WITNESS:   JAMES A. BRETT, ESQUIRE

 3    EXAMINATION                          PAGE

 4    (By Mr. Dorny)                         4

 5

 6

 7

 8

 9

10                  E X H I B I T S

11    NO.                                   PAGE

12    1    Renotice of deposition            5

13    2    Letter to Mr. Cosgrove from

14         Attorney Brett dated 4/13/06      7

15    3    Letter to Department of State

16         from Attorney Brett dated

17         4/12/06                          15

18    4    Letter to Attorney Brett from

19         Attorney Dorny dated 3/16/07     17

20    5    Letter to Attorney Brett from

21         Attorney Dorny dated 7/12/07     19

22

23    (Exhibits retained by the court reporter and

24    returned with the transcript)
```

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

4

```
 1                    P R O C E E D I N G S

 2                    JAMES A. BRETT, ESQUIRE, having been

 3        satisfactorily identified by the production

 4        of his driver's license and duly sworn by the

 5        Notary Public, was examined and testified as

 6        follows in answer to direct interrogatories:

 7

 8        EXAMINATION MR. DORNY:

 9

10   Q.   Could you, please, state your name for the

11        record.

12   A.   James A Brett.

13   Q.   What is your residential address, Mr. Brett?

14   A.   89 Fair Oaks Park, Needham, Massachusetts.

15   Q.   Have you ever been deposed before?

16   A.   No.

17   Q.   Have you ever taken a deposition as an

18        attorney before?

19   A.   Yes, I have.

20   Q.   You are familiar with depositions?

21   A.   I am.

22   Q.   And the fact that we need to speak

23        independently so the court reporter can

24        record everything?
```

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

5

```
 1    A.    Yes.

 2    Q.    And if you don't understand the question,

 3          please let me know.

 4    A.    I will.

 5                MR. DORNY:  Can you mark that as the

 6          first exhibit, please.

 7          (Document marked as Exhibit 1 for

 8          identification)

 9    Q.    I show you what has been marked as Exhibit 1,

10          and ask you if you have seen that document

11          before.

12    A.    Yes.

13    Q.    And this is a notice of your deposition; is

14          that correct?

15    A.    Yes.

16    Q.    And you are appearing here today pursuant to

17          this notice; is that correct?

18    A.    Yes.

19    Q.    The notice also requested that you provide

20          any documents that you have relating to

21          communications with the plaintiff, Riverbank,

22          Inc.?

23                MR. HOLT:  I am going to note here

24          that, Mr. Dorny, we have provided you with
```

```
1              those documents responsive to the

2              enumerations on Exhibit 1, to the extent that

3              they are not privileged.

4                        MR. DORNY:  Okay.  That's fine.  I

5              presumed that was the case.

6    Q.   Mr. Brett, by whom are you employed?

7    A.   Wilson, Dawson & Brett.

8    Q.   That's a law firm?

9    A.   It is.

10   Q.   Where is that located?

11   A.   21 Custom House Street in Boston.

12   Q.   Are you familiar with a company called

13        "Riverbank, Inc."?

14   A.   Yes.

15   Q.   And what do you know about Riverbank, Inc.?

16   A.   To the best of my knowledge, it is a one-man

17        tax preparation company.

18   Q.   When did you first learn about Riverbank,

19        Inc.?

20   A.   Sometime in 2006, I believe.

21   Q.   What were the circumstances under which you

22        first learned about Riverbank, Inc.?

23   A.   I was doing a name search for a client.

24   Q.   Who was that client?
```

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

7

1    A.    River Bank.

2    Q.    At that time, was River Bank, that's two

3          words that one, was that the name of your

4          client?

5    A.    No.

6    Q.    What was the name at that time?

7    A.    Lawrence Savings Bank.

8    Q.    How did you learn about Riverbank, Inc.?

9    A.    I don't recall.

10   Q.    Did you have any communications with anybody

11         at Riverbank, Inc.?

12   A.    Yes.

13   Q.    When do you recall the first communication

14         you had with Riverbank, Inc.?

15   A.    I sent them a letter in, I believe, April of

16         2006.

17              MR. DORNY:  Mark that as Exhibit 2.

18         (Document marked as Exhibit 2 for

19         identification)

20   Q.    I show you what has been marked as Brett

21         Exhibit 2, and ask you if you recognize that

22         document.

23   A.    I do.

24   Q.    What is Exhibit 2?

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

8

| | | |
|---|---|---|
| 1 | A. | It is a letter to Daniel Cosgrove of |
| 2 | | Riverbank, Inc., dated April 13, 2006. |
| 3 | Q. | Is that the communication you just referred |
| 4 | | to? |
| 5 | A. | It is. |
| 6 | Q. | Did you have any communications with |
| 7 | | Riverbank, Inc., before sending this letter? |
| 8 | A. | I don't believe so. |
| 9 | Q. | The first paragraph of the letter says that |
| 10 | | you left a message at Mr. Cosgrove's office |
| 11 | | yesterday, the day before? |
| 12 | A. | Yes. |
| 13 | Q. | Do you recall leaving a message at |
| 14 | | Mr.  Cosgrove's office? |
| 15 | A. | I don't. |
| 16 | Q. | Do you recall making any telephone calls to |
| 17 | | Mr. Cosgrove's office? |
| 18 | A. | Yes. |
| 19 | Q. | When do you recall making a telephone call to |
| 20 | | Mr. Cosgrove's office? |
| 21 | A. | Sometime after April 13, 2006. |
| 22 | Q. | Do you recall, approximately, how long after? |
| 23 | A. | I don't specifically.  I would say within the |
| 24 | | next month or so. |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

9

| | | |
|---|---|---|
| 1 | Q. | It wasn't years later? |
| 2 | A. | No. |
| 3 | Q. | Did you talk to Mr. Cosgrove when you made |
| 4 | | that telephone call? |
| 5 | A. | I don't believe so. |
| 6 | Q. | Did you talk to any person when you made that |
| 7 | | telephone call, or did you talk to a machine? |
| 8 | A. | I believe a machine. |
| 9 | Q. | Did you leave a message on that machine? |
| 10 | A. | I believe I did. |
| 11 | Q. | Do you recall what the message was that you |
| 12 | | left? |
| 13 | A. | No. |
| 14 | Q. | Were there any other telephone calls you made |
| 15 | | to Mr. Cosgrove or Riverbank, Inc.? |
| 16 | A. | Other than the two or three I may have made |
| 17 | | after April 13? |
| 18 | Q. | So you may have made two or three; is that |
| 19 | | correct? |
| 20 | A. | I am guessing.  I think I made more than one. |
| 21 | Q. | Did you receive any telephone calls from |
| 22 | | Mr. Cosgrove? |
| 23 | A. | Not that I can recall. |
| 24 | Q. | Did you receive any telephone messages from |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

10

1        Mr. Cosgrove?

2    A.   Not that I can recall.

3    Q.   Do you have a voice-mail system?

4    A.   Yes.

5    Q.   The telephone number at the top of the letter

6         there, is that to your office, or is that to

7         the firm's office?

8    A.   The firm's office.

9    Q.   Do you have a direct dial number?

10   A.   I do.

11   Q.   When making a telephone call to Mr. Cosgrove

12        and you got a machine, did you leave your

13        direct telephone number for him to call you

14        back?

15   A.   No idea.

16   Q.   Do you recall whether you left the office

17        number for him to call you back?

18   A.   I have no idea.  It would certainly be my

19        practice.  But I don't recall.

20   Q.   What is your direct dial telephone number?

21   A.   617.646.4484, I think.

22   Q.   If someone calls the main number and asks for

23        you, does it get transferred directly to your

24        direct dial number?

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

11

| | | |
|---|---|---|
| 1 | A. | Are you asking me what I believe happens? |
| 2 | Q. | What do you believe happens? |
| 3 | A. | I believe someone would get connected to my |
| 4 | | direct number. |
| 5 | Q. | Do you have a receptionist at Wilson, Dawson |
| 6 | | & Brett that answers the telephone? |
| 7 | A. | We do. |
| 8 | Q. | And in April of 2006 who was the |
| 9 | | receptionist? |
| 10 | A. | Her name was Kathy.  I can't recall her last |
| 11 | | name. |
| 12 | Q. | In 2006, besides Kathy, the receptionist, did |
| 13 | | anyone else answer the main number? |
| 14 | A. | When Kathy would go to lunch, someone would |
| 15 | | fill in. |
| 16 | Q. | Would that be anyone, in particular? |
| 17 | A. | No.  I should back off.  The correct answer |
| 18 | | to that is that I don't know. |
| 19 | Q. | How many employees does Wilson, Dawson & |
| 20 | | Brett have? |
| 21 | A. | Five. |
| 22 | Q. | And how many of those employees are |
| 23 | | attorneys? |
| 24 | A. | Four. |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

12

1   Q.   Was that also true in 2006?

2   A.   I believe so.   I am not sure when our latest

3        associate came in, but I believe so.

4             Let me just think a minute.   She was

5        working for Bingham McCutchen in London.   And

6        I believe -- no.   I believe she came in the

7        summer of 2006.

8   Q.   So in approximately April of 2006 how many

9        employees would there have been?

10  A.   My recollection is four.

11  Q.   And three of those were attorneys; is that

12       correct?

13  A.   Yes.

14  Q.   And the other employee was Kathy, the

15       receptionist; is that correct?

16  A.   No.   I don't actually employ Kathy.   We share

17       a floor with another law firm.   And she is

18       technically employed by them.

19  Q.   What's the name of the other firm?

20  A.   McDermott, Quilty & Miller.

21  Q.   Is Kathy still the receptionist?

22  A.   No.

23  Q.   When did Kathy cease to be the receptionist?

24  A.   I don't recall.

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

13

1    Q.   Do you recall what year it may have been?

2    A.   '06, '07.

3    Q.   Who was the receptionist after Kathy?

4    A.   Stephanie Prince.

5    Q.   In 2006 did Kathy ever take written telephone

6         messages for you?

7    A.   I am sure she did on occasion.  But very,

8         very infrequently.

9    Q.   When you received a written telephone

10        message, on what kind of form was it?

11   A.   One of those little pink slips of paper.

12   Q.   Do you retain those pink slips of paper?

13   A.   Yes.

14   Q.   Where do you store those pink slips of paper?

15   A.   I put them in the files.

16   Q.   What files do you put them in?

17   A.   Whatever file they pertain to.

18   Q.   Do you know an attorney named Shannon Zollo?

19   A.   No.

20   Q.   Have you ever had any telephone calls with

21        Shannon Zollo?

22   A.   Not that I am aware of.

23   Q.   Do you recall receiving any telephone

24        messages from Mr. Zollo?

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

14

1    A.    It is a Mr.?

2    Q.    Yes.

3    A.    I don't.

4    Q.    In the second paragraph of your letter, Brett

5          Exhibit 2, last sentence, you refer to, it

6          says, "While, as you can see, their version

7          of River Bank is two words rather than one."

8          Do you see that?

9    A.    I do.

10   Q.    Did you consider, in writing this letter,

11         that River Bank as two words rather than one

12         was important?

13   A.    I don't know how to answer that.

14   Q.    Why do you refer to it as being two words

15         here?

16   A.    Because it is different from Mr. Cosgrove's

17         firm.

18   Q.    You considered two words to be different than

19         one word; is that correct?

20   A.    Yes.

21   Q.    Why does it matter that two words is

22         different than one word?

23   A.    Because they are different.

24   Q.    Why are you pointing out this difference to

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

15

1       Mr. Cosgrove?

2   A.  To indicate to him that the River Bank, whom

3       I represented, their name is different from

4       the name of his firm.

5   Q.  In the third paragraph of your letter, the

6       third line from the bottom of that paragraph,

7       it says, "The bank would agree that you could

8       continue to do business as Riverbank."

9           Is there some reason that

10      Mr. Cosgrove could not do business as

11      Riverbank?

12  A.  Well, I believe his name is illegal because

13      it contains the name "bank," and he is not

14      chartered as a bank.

15          MR. DORNY: Mark that as the next

16      exhibit.

17      (Document marked as Exhibit 3 for

18      identification)

19  Q.  I show you what has been marked as Brett

20      Exhibit No. 3 and ask you if you recognize

21      that document.

22  A.  I do.

23  Q.  What is Exhibit 3?

24  A.  A letter to the Corporation Division of the

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

16

| | | |
|---|---|---|
| 1 | | Department of State of the State of New |
| 2 | | Hampshire dated April 12, 2006. |
| 3 | Q. | This is a letter you sent; is that correct? |
| 4 | A. | That's what it appears. |
| 5 | Q. | And why did you send this letter? |
| 6 | A. | I think the letter speaks for itself.  It is |
| 7 | | asking to reserve the name "River Bank |
| 8 | | Corporation." |
| 9 | Q. | You were doing that on behalf of your client, |
| 10 | | I presume? |
| 11 | A. | I was. |
| 12 | Q. | Did you send a similar letter to the State of |
| 13 | | Massachusetts? |
| 14 | A. | I don't recall.  I believe I did. |
| 15 | Q. | Were you able to reserve the name "River Bank |
| 16 | | Corporation" in New Hampshire? |
| 17 | A. | Ultimately, yes. |
| 18 | Q. | When you say "ultimately, yes," was there a |
| 19 | | problem with registering the name in New |
| 20 | | Hampshire? |
| 21 | A. | There was a problem with registering it in |
| 22 | | the Secretary of State's Office.  We later |
| 23 | | were able to register it, if I recall |
| 24 | | correctly, with the Banking Commission. |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

17

| | | |
|---|---|---|
| 1 | Q. | Did you send a similar letter to the Banking |
| 2 | | Commission in New Hampshire? |
| 3 | A. | I did not. |
| 4 | Q. | How do you know that it was registered with |
| 5 | | the Banking Commission in New Hampshire? |
| 6 | A. | I was told. |
| 7 | Q. | Who told you that? |
| 8 | A. | I believe Gerald Mulligan. |
| 9 | Q. | Did you have any involvement in registering |
| 10 | | the name with the Banking Commission in New |
| 11 | | Hampshire? |
| 12 | A. | I did not. |
| 13 | Q. | Did you register the name "River Bank" with |
| 14 | | the Secretary of State for Massachusetts? |
| 15 | A. | I did not. |
| 16 | Q. | Did you register the name "River Bank" with |
| 17 | | the Banking Commission for the State of |
| 18 | | Massachusetts? |
| 19 | A. | I did not. |
| 20 | | MR. DORNY:  Mark that, please. |
| 21 | | (Document marked as Exhibit 4 for |
| 22 | | identification) |
| 23 | Q. | I show you what has been marked as Brett |
| 24 | | Exhibit 4, and ask you if you recognize that |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

18

| | | |
|---|---|---|
| 1 | | document. |
| 2 | A. | I do. |
| 3 | Q. | What is Brett Exhibit 4? |
| 4 | A. | It is a letter from you to me dated March 16, |
| 5 | | 2007. |
| 6 | Q. | It is a letter regarding the name "River |
| 7 | | Bank"; is that correct? |
| 8 | A. | It is. |
| 9 | Q. | Did you ever respond to that letter? |
| 10 | A. | I don't believe so. |
| 11 | Q. | Did you ever receive any telephone messages |
| 12 | | from me following this letter? |
| 13 | A. | My recollection is that you and I played |
| 14 | | telephone tag for a long period of time. |
| 15 | | Whether it was immediately following this |
| 16 | | letter or not, I can't tell you. |
| 17 | Q. | So at some point you believe you tried to |
| 18 | | call me; is that correct? |
| 19 | A. | Yes. |
| 20 | Q. | You have no recollection of when that was? |
| 21 | A. | I really don't. |
| 22 | Q. | Do you have any records that would indicate |
| 23 | | when that was? |
| 24 | A. | No. |

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

19

1   Q.   The telephone records for your business, do
2        they show the numbers that you call?
3   A.   I don't know as I've ever seen the telephone
4        records for my business.
5            MR. DORNY:  Mark that as the next
6        exhibit.
7        (Document marked as Exhibit 5 for
8        identification)
9   Q.   I show you what has been marked as Exhibit 5,
10       and ask you if you recognize that document.
11  A.   I do.
12  Q.   What is Exhibit 5?
13  A.   A letter from you to me dated July 12, 2007.
14  Q.   Also regarding the name "River Bank"; is that
15       correct?
16  A.   Yes.
17  Q.   Do you recall receiving that letter?
18  A.   I do.
19  Q.   Did you ever respond to that letter?
20  A.   I believe I called you.  I'm sorry.  I called
21       you at some point in time after this letter.
22       I don't recall when.
23  Q.   You never responded in writing to that
24       letter, did you?

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

20

1   A.   No.

2   Q.   When did you first learn about the lawsuit

3        Riverbank versus River Bank?

4   A.   My best guess, it was sometime after July 12,

5        2007.

6   Q.   Do you recall how you learned about the

7        lawsuit Riverbank versus River Bank?

8   A.   Mr. Mulligan called me.

9   Q.   Do you know how Mr. Mulligan learned about

10       the lawsuit?

11              MR. HOLT:  I am going to object

12       insofar as that hinges upon attorney-client

13       communications with Mr. Brett and

14       Mr. Mulligan.  With that in mind, I think the

15       witness can answer.

16  A.   No.

17              MR. DORNY:  Why don't we take a

18       brief recess, and I think I may be almost

19       done.

20       (Recess taken)

21              MR. DORNY:  I have no further

22       questions.

23              MR. HOLT:  I have no questions.

24              THE COURT REPORTER:  Would you like

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

21

1          the original and a mini?

2                    MR. DORNY:   Yes.

3                    THE COURT REPORTER:   Would you like

4      a copy and a mini?

5                    MR. HOLT:   Yes.

6      (Whereupon the deposition was concluded

7      at 10:08 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

22

1    COMMONWEALTH OF MASSACHUSETTS

2    MIDDLESEX, SS

3        I, Deborah G. Rumson, Registered

4    Professional Reporter and Notary Public in

5    and for the Commonwealth of Massachusetts, do

6    hereby certify that pursuant to appropriate

7    notice of taking deposition, there came

8    before me the following-named person, to wit:

9    JAMES A. BRETT, ESQUIRE, who was by me duly

10   sworn; that he was thereupon examined upon

11   his oath and his examination reduced to

12   writing by me; and that the deposition is a

13   true record of the testimony given by the

14   witness.

15       IN WITNESS WHEREOF, I have hereunto

16   set my hand and seal this        day of

17          , 2009.

18

19

20   My commission expires:

21   November 29, 2013

22

23                    Notary Public

24

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

23

```
1        ERRATA SHEET DISTRIBUTION INFORMATION

2      DEPONENT'S ERRATA AND SIGNATURE INFORMATION

3

4        ERRATA SHEET DISTRIBUTION INFORMATION

5      The original of the errata sheet has been

6      delivered to Thomas F. Holt, Jr., Esquire.

7            When the errata sheet has been

8      completed by the deponent and signed, a copy

9      thereof should be delivered to each party of

10      record and the ORIGINAL delivered to Brett N.

11      Dorny, Esquire, to whom the original

12      deposition transcript was delivered.

13

14      INSTRUCTIONS TO DEPONENT:

15            After reading this volume of your

16      deposition, indicate any corrections or

17      changes to your testimony and the reasons

18      therefor on the errata sheet supplied to you

19      and sign it.  DO NOT make marks or notations

20      on the transcript volume itself.  Add

21      additional sheets if necessary.  Please refer

22      to the above instructions for errata sheet

23      distribution information.

24
```

James A. Brett, Esq. 1-23-2009
Riverbank, Inc. v. River Bank

24

1      ATTACH TO THE DEPOSITION OF JAMES BRETT, ESQ.

2      CASE:  RIVERBANK, INC. VS. RIVER BANK

3      DATE TAKEN:  1/23/09

4                          ERRATA SHEET

5      Please refer to Page 23 for errata sheet and

6      distribution instructions.

7      PAGE         LINE       CHANGE     REASON

8

9

10

11

12

13

14

15     I have read the foregoing transcript of my

16     deposition, and except for any corrections or

17     changes noted above, I hereby subscribe to

18     the transcript as an accurate record of the

19     statements made by me.

20

21

22

23                        JAMES A. BRETT, ESQ.      DATE

24

### Wilson, Dawson & Brett

*A Professional Association*
21 Custom House Street
Boston, MA 02110
Tel: (617) 646-4411
Fax: (617) 646-4413

FILE COPY

April 13, 2006

<u>*Via Facsimile and U.S. Mail*</u>

Daniel F. Cosgrove
Riverbank, Inc.
555 Pleasant Street, 2nd Floor
Brockton, MA 02301



EXHIBIT
Brett 6
1/23/09

Dear Mr. Cosgrove:

I left a message at your office yesterday, but I understand that you are a tax preparer and probably won't come up for air until next week.

I am an attorney who represents a small bank on the North Shore which is currently in the process of contemplating a name change. They are currently considering four different names, one of which is River Bank. While, as you can see, their version of River Bank is two words rather than one; I believe that it may cause some concern at the Secretary of State's office.

All of this is somewhat premature because not only does the name present some problems in Massachusetts, it may potentially have problems in New Hampshire where the bank also has a branch. However, the bank has asked me to contact you to explore whether you might entertain the idea of changing your corporate name to something such as Riverbank Financial, Inc. I want to make it clear that I am only talking about changing your corporate name, not the name under which you do business. If you are open to the idea, and if the bank decides that they are inclined to use River Bank, the bank would agree that you could continue to do business as Riverbank and would not have to change any stationary or telephone listings, etc. I, of course, would handle all legal work and pay all fees so that you would not incur any expenses.

Again, this is premature but if you could give me a call at your earliest convenience to discuss this matter I would appreciate it.

Thank you.

Very truly yours,

James A. Brett

JAB:smc